**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KIDSPEACE CORPORATION,<br><br>Defendant and<br>Third-Party Plaintiff<br><br>PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION,<br><br>Third-Party Defendant | CIVIL ACTION<br><br>NO. 05-0652 |

J. William Ditter, Jr., S.J. August 22, 2006

**OPINION AND JUDGMENT**

This is a diversity action in which an insurance company and the successor to an insolvent insurance company seek rulings that they have no obligation to indemnify their policy holder for the amount it paid to settle a lawsuit. For the reasons that follow, I will grant the motions for summary judgment of the insured, KidsPeace Corporation, and refuse those of the Lexington Insurance Company and the Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA").

This case was prompted by a settlement that KidsPeace Corporation entered into with a minor child who alleged that he suffered sexual abuse while he was being treated and cared for by KidsPeace. KidsPeace had two insurance policies that it asserts covered the settlement, a

$700,000 healthcare professional liability policy purchased from the Lexington Insurance Company and a $300,000 personal injury policy purchased from PHICO. It is undisputed that both were in effect at the times that are relevant here. However, when the victim's suit was initiated and the settlement took place, PHICO had been declared insolvent and placed in liquidation. As a result of PHICO's insolvency, KidsPeace seeks indemnification from PPCIGA which by statute represents PHICO and incurs many of its liabilities.

Background

KidsPeace is a private, non-profit, Pennsylvania corporation that provides specialized residential treatment programs and educational services for children. A child, "MC," was admitted to KidsPeace in early 1998 for the treatment of depression. At that time he was a minor. Shortly after his admission, MC came in contact with "DS," a KidsPeace counselor. On one particular occasion DS imprisoned MC in the bathroom, pulled down his pants, covered his mouth and sodomized MC. Following the rape, DS told MC that if he reported the assault no one would believe him because he was crazy.

As a result of this incident, counsel for MC filed a writ of summons in the Court of Common Pleas of Lehigh County. Thereafter, MC's lawyer provided KidsPeace with a draft complaint that he planned to file.[1] KidsPeace put its insurance carriers on notice that the claim had been asserted. Lexington retained counsel to defend KidsPeace, but both carriers denied coverage. Before the complaint was filed against KidsPeace, KidsPeace settled with MC for

---

[1] All of the facts to which I refer in this opinion are taken from the draft complaint that MC was going to file if KidsPeace did not enter into a settlement with him. No party has disputed the truthfulness of those allegations or asserted that they should not be a basis for deciding the issues here.

$700,000 and demanded indemnification from the insurance carriers which both denied. Lexington then brought this action asking for a declaration that it has no obligation to indemnify KidsPeace for the amount it paid MC in settlement. KidsPeace filed its answer to Lexington's complaint and also filed a third-party complaint against PPCIGA.

## Discussion

KidsPeace contends that Lexington's healthcare professional liability policy obligates it to indemnify KidsPeace for the settlement it made with MC, as well as the defense costs KidsPeace incurred in the underlying litigation, and that to the extent that Lexington does not pay, the PHICO personal injury policy obligates PPCIGA to indemnify KidsPeace for the settlement, up to $300,000, and defense costs in the underlying litigation.

I will consider these matters in turn.

### Lexington's Responsibility to KidsPeace

Under the policy it issued to Kidspeace, Lexington agreed to pay for damages resulting from a medical incident that arises out of professional services unless that incident involved sexual misconduct by a perpetrator whom KidsPeace knew or should have known had a prior history of such sexual misconduct. There are three issues that must be determined:

1) Was the abuse that MC suffered a medical incident arising out of professional services?

2) What is the proper interpretation of the policy's sexual misconduct exclusion? and

3) Does an exception to that exclusion mean it is not applicable under the circumstances here?

Lexington's insuring agreement states, in relevant part, that:

> Lexington will pay those sums that **you** become legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any **Insured**.

The policy defines a medical incident as "any act, error or omission in the providing of or failure to provide **professional services**." Professional services are defined as:

> 1. Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling or treatment of deceased human bodies ...
>
> 2. Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or
>
> 3. Supervising, teaching, proctoring others at your request.

Here the "you" in the first paragraph refers to KidsPeace. Therefore, Lexington will pay KidsPeace for those sums it is legally obligated to pay a victim as damages resulting from a medical incident arising out of professional services provided by any "insured," a term that by policy definition includes both KidsPeace and the perpetrator, DS. The question is whether the attack on MC by DS was a medical incident, and if so, whether it arose out of professional services provided by the perpetrator or KidsPeace. ___________________

The definition of a medical incident in the policy is very broad: "any act, error or omission in the providing of or failure to provide **professional services**." As long as the

definition of professional services is met, a medical incident is really any act, error or omission. Sexual abuse is an act in every sense of the word. It can also be considered an error or omission in supervising or monitoring the child as was certainly the perpetrator's job as a KidsPeace counselor.

Although the act of sexual abuse does not come within either of the first two definitions of professional services set forth above, it does come within the third definition, "supervising, teaching, proctoring others at your request." Piecing both segments of the insuring agreement's provisions together, the sexual abuse at issue falls within the policy's definition of medical incident arising out of professional services. In terms of the facts here, having been requested by KidsPeace to supervise or proctor[2] MC, DS omitted doing so. It may be a broad definition of a medical incident, but it is the one Lexington chose.

<u>Lexington's Sexual Misconduct Exclusion</u>

Lexington's policy has a sexual misconduct provision that excludes coverage to a perpetrator who committed a sexual act or to one who knew or should have known that the perpetrator had a history of sexual misconduct.

This is what it says:

This insurance does not apply to any medical incident, claim or suit arising out of: ...

O. Sexual Misconduct

> Any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct

[2] Proctor means to monitor, that is to keep watch over or to observe. DS failed to watch over MC. In addition, DS was able to attack MC because KidsPeace also failed to watch over MC.

of a sexual nature. However, the exclusion does not apply to:

> 1. Any Specific Individual **Insured** who allegedly committed such sexual misconduct, unless it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct. If it is judicially determined that the Specific Individual **Insured** committed the sexual misconduct [AIG] [sic] will not pay any damages.
>
> 2. Any other **Insured**, unless that **Insured:**
>
>    a. knew or should have known about the sexual misconduct allegedly committed by the Specific Individual **Insured,** but failed to prevent or stop it; or
>
>    b. knew or should have known that the Specific Individual **Insured** who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

[Lexington] will defend **claims** alleging such acts until final adjudication.

As used in this exclusion, Specific Individual **Insured** includes employees and authorized volunteer workers while performing duties related to the conduct of **your** business. In other words, it refers to DS whose conduct was related to KidsPeace's business.

Sexual abuse is obviously a sexual act bringing the settlement outside of Lexington's protection for DS, the perpetrator, assuming there has been a judicial determination of his guilt. We need not tarry on the question of whether there was or was not because our concern here is only whether there is coverage for KidsPeace.

Here, KidsPeace is "any other insured." There is no evidence that KidsPeace was aware or should have been aware that the assault on MC was taking place and failed to prevent or stop it, provision for which is found in section 2.a. Section 2.b. is equally inapplicable because there

is no evidence that DS had a history of *such sexual misconduct*.[3] As a result, KidsPeace obviously could not have known of such a prior history. It is important to note that although I am aware DS has a prior civil and criminal history relating to his asphyxiation of a 12 year old resident, which is clearly abhorrent and egregious, that act of violence was not one of *sexual misconduct,* much less of "such" sexual conduct, that is, abuse of the type visited by DS on MC. Therefore, as far as the record shows, DS had no history of "such sexual misconduct" as required by 2.b. and the exception to the policy exclusion applies.

In summary, I conclude first, the attack by DS was an act that took place at a time that he had been requested by KidsPeace to supervise or monitor MC, and second, there is no showing that KidsPeace knew or should have known that DS had a history for such misconduct. It follows that Lexington is required to indemnify KidsPeace for the amount of the settlement KidsPeace made with MC, less the policy's deductible.

PHICO's Responsibility to KidsPeace

KidsPeace contends that PPCIGA should reimburse it for the $100,000 Lexington deductible.

Under the policy that it issued to KidsPeace, PHICO agreed to pay for "all sums which the **insured** shall be legally obligated to pay as damages because of **personal injury** and **property damage** caused by an **occurrence** during the **policy period,**" excluding those that arise from a medical incident.

[3] MC's draft complaint states that "KidsPeace knew or should have known of DS's propensity of, and history of, violence including the asphyxiation of a 12 year old resident in 1994 that resulted in a criminal and civil prosecution." As discussed in footnote 1, no party has disputed the truthfulness of these allegations or asserted that they should not be a basis for deciding the issues here.

There are four issues that must be determined:

1) Did MC suffer from personal injury as a result of the sexual abuse as is required by the policy?

2) Was the sexual abuse that MC suffered an occurrence as defined by the policy?_

______3) Was the sexual abuse that MC suffered a medical incident as defined by the policy, therefore excluding KidsPeace from a right of indemnification?_

______4) Has KidsPeace exhausted all of its remedies under the Lexington policy as is required by the PPCIGA statute?

______Personal injury is defined under this policy as "bodily injury." Bodily injury is defined as "injury to the human body, illness or disease sustained by a person..." The sexual abuse that MC endured clearly qualifies as injury to the human body and therefore qualifies as personal injury under the policy.

An occurrence is defined by this policy as:

> (1) an accident (including continuous or repeated exposure to substantially the same general conditions, or the happening of any of the offenses described in the definition of personal injury) which results in personal injury or property damage neither expected nor intended from the standpoint of the insured;
>
> (2) an assault, battery, or assault and battery, not committed by or at the direction of the insured which results in bodily injury or property damage; or
>
> (3) any action taken by the insured in good faith in an emergency for the purpose of preventing injury or damage to the person or property of the insured or others, which results in bodily injury or property damage.__________

______The sexual abuse does not fall within the accident section, part 1 above, because the

abuse was deliberate. It also does not fall within the third section because it was not an action taken in good faith or for emergency purposes. However, it does fall within the second definition of occurrence. The sexual abuse was an assault and battery. It was not committed at the direction of the insured, KidsPeace. It did result in bodily injury. Therefore, the sexual abuse is an occurrence for the purposes of this policy.

The PHICO policy excludes coverage for claims arising from a medical incident. The PHICO policy defines a medical incident[4] as:

any act or omission:

> (1) in the furnishing of any professional health care service *immediately incident* to the care of patients including, but not limited to, the furnishing of food, beverages, medications or appliances in connection with such services and the post-mortem handling of human bodies by the insured, any employee of the insured, or any person acting under the personal direction, control or supervision of the insured.

The sexual abuse was clearly an act so we turn to the definition of professional health care service to determine if the sexual abuse was an "act in the furnishing of any professional health care service." Because "professional health care service" was not defined in the PHICO policy, we look to *Physicians Ins. Co. v. Pistone,* 726 A.2d 339 (Pa. 1999), as suggested by the parties, for the definition of the phrase.

In *Pistone,* the Supreme Court of Pennsylvania provided a definition for "professional health care service" when it is not defined in an insurance policy. *Pistone* held that to decide whether an act should be considered a professional health care service or not, a court must

---

[4] I recognize that because of *Pistone*, medical incident is defined differently by the PHICO policy than it is by the Lexington policy.

determine "whether the act that caused the alleged harm is a medical skill associated with specialized training." 726 A.2d, at 344. When this somewhat narrow definition of professional health care service is applied to the facts here, it is apparent that PHICO's medical incident exclusion does not apply. The act that caused harm to MC was the sexual abuse by DS. Obviously sexual abuse is not a medical skill at all, much less one that is associated with specialized training.

PPCIGA also argues that KidsPeace has not exhausted its remedies under the Lexington policy as is required by the PPCIGA statute. Article XVIII of the PPCIGA statute, 40 P.S. § 991.1817, requires that there be no duplication of recovery. Specifically it provides:

> (a) Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

Exhaust is defined by § 991.1802 as, "obtaining the maximum limit under the policy."

KidsPeace has exhausted its rights under the Lexington policy. This opinion and accompanying order require that Lexington indemnify KidsPeace for the full amount of the settlement ($700,000, which also happens to be the full amount of the policy) minus the deductible ($100,000). As there is nothing more it can get from Lexington, KidsPeace has exhausted its rights under the Lexington policy.

PPCIGA contends that by statute it is only required to pay "covered claims" and the

Lexington deductible is outside the applicable definition of a covered claim.

Section 991.1803 states:

> (b) The association shall have the following powers and duties:
>
> (1)(I) To be obligated to pay covered claims existing prior [sic] the determination of the insolvency, arising within thirty (30) days after the determination of the insolvency or before the insured replaces the policy or causes its cancellation if he does so within thirty (30) days of the determination. Any obligation of the association to defend an insured shall cease upon the association's payment or tender of an amount equal to the lesser of the association's covered claim obligation or the applicable policy limit. Such obligation shall be satisfied by paying to the claimant an amount as follows:
>
> ...
>
> (B) An amount not exceeding three hundred thousand ($300,000) dollars per claimant for all other covered claims.

Section 991.1802 defines covered claim as:

> (1) An unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article ...
>
> (2) The term shall not include any amount awarded as punitive or exemplary damages; sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise.

PPCIGA argues that the $100,000 deductible is not a covered claim but is instead an amount due to an insurer "as subrogation recoveries or otherwise."

PPCIGA is wrong. The $100,000 deductible is not an amount due a "reinsurer, insurer, insurance pool or underwriting association." It is an amount due KidsPeace. Moreover, it is not a subrogation recovery. Commonly, subrogation takes place when an insurer pays an injured

policy holder and having done so, is entitled to seek recovery from a tort feasor who brought about the injury. As it is tritely said, the insurer stands in the shoes of its policy holder. If there is any shoe-standing here, it is PPCIGA standing in PHICO's shoes, governed by PHICO's policy and PPCIGA's statutory duty.

Because the claim of KidsPeace for the Lexington deductible is a covered claim and is not a subrogation recovery by an insurer, PPCIGA must indemnify KidsPeace in the amount of $100,000.

Summary

As to Lexington, I conclude that the sexual abuse was a medical incident arising out of professional services, the sexual misconduct exclusion in Lexington's policy does not apply, and therefore it must indemnify KidsPeace for the full amount of the settlement less the policy's deductible.

In addition, the PHICO policy also provides coverage. The assault by DS was an occurrence that caused personal injury. PHICO's medical incident exclusion does not apply because sexual abuse is not a medical skill associated with specialized training. However, PPCIGA is responsible only for indemnifying KidsPeace in the amount of $100,000, the amount of the Lexington deductible.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KIDSPEACE CORPORATION,<br><br>Defendant and<br>Third-Party Plaintiff<br><br>PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION,<br><br>Third-Party Defendant | : | CIVIL ACTION<br><br>NO. 05-0652 |

**JUDGMENT AND ORDER**

AND NOW, this 22nd day of August, 2006, upon consideration of Lexington's Complaint for Declaratory Judgment, KidsPeace Corporation's Third Party Complaint against Pennsylvania Property and Casualty Insurance Guaranty Association, cross motions for summary judgment, and all responses thereto, THIS COURT HEREBY ORDERS the motion for summary judgment by KidsPeace is granted against Lexington and Pennsylvania Property and Casualty Insurance Guaranty Association and the motions for summary judgment filed by Lexington and PPCIGA are denied. It is therefore the declaration of this court that Lexington Insurance Company must indemnify KidsPeace Corporation for the settlement of the lawsuit in the Court of Common Pleas, Lehigh County, Pennsylvania, captioned *MC v. DS and KidsPeace Nat'l Ctrs of N.Am., Inc. d/b/a KidsPeace Nat'l Hosp. For Kids in Crisis,* 2003-C-225. It is

further ordered that the Pennsylvania Property and Casualty Insurance Guaranty Association must indemnify KidsPeace Corporation for the $100,000 deductible in the Lexington insurance policy.

Judgment is hereby entered in favor of defendant and third-party plaintiff KidsPeace and against plaintiff Lexington and third-party defendant Pennsylvania Property and Casualty Insurance Guaranty Association.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.